**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **GARAN, INCORPORATED and GARAN SERVICES CORPORATION**,<br>Plaintiffs,<br><br>v.<br><br>**MANIMAL, LLC**,<br><br>Defendant. | Case No. 3:20-cv-00623-IM<br><br>**OPINION AND ORDER** |

G. Roxanne Elings, L. Danielle Toaltoan, and Steven E. Klein, Davis Wright Tremaine LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201. Attorneys for Plaintiffs.

Anthony M. Verna, III, Verna Law, P.C., Rye, NY 10580. Judith A. Endejan, Endejan Law LLC, 5109 23rd Avenue West, Everett, WA 98203. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This matter comes before this Court on Defendant Manimal, LLC's Motion for Summary Judgment, ECF 37, and Plaintiffs Garan, Incorporated and Garan Service Corporation's (collectively, "Garan") Cross-Motion for Summary Judgment, ECF 42.[1] Oral argument was held

[1] Because of the presence of sensitive information, Plaintiffs filed this motion under seal. Plaintiffs also filed a redacted, unsealed version of the same document. ECF 43. In general, this Court will refer to the unredacted version (i.e., ECF 42) except to announce its judgment, which will apply to both iterations of the motion.

on January 13, 2022. ECF 68. After considering the record, written briefs, and arguments of counsel, this Court DENIES Defendant's Motion for Summary Judgment in its entirety and GRANTS Plaintiffs' Motion for Summary Judgment as to the First Claim, seeking review of the Trademark Trial and Appeal Board's ("TTAB") decision. The Parties are ordered to submit supplemental briefing of no more than five pages on whether or not, in light of this Court's decision as to the First Claim, Plaintiffs' Fifth Claim alleging "no-bona-fide-intent-to use," should be dismissed as moot.

## BACKGROUND

### A. The Parties

Plaintiffs created the GARANIMALS brand in 1972. ECF 44, Kamiel Decl., at ¶ 9. GARANIMALS sells baby and children's clothing. *Id*. at ¶¶ 8, 10, 16. GARANIMALS goods are sold at Walmart retail stores, online through Walmart's website, and through other online retailers such as Amazon. *Id*. at ¶ 17. GARANIMALS is one of the two top selling children's apparel brands in units in the United States, and advertises extensively on the internet (including social media), digital media, in print, and on television. *Id*. at ¶¶ 20–30.

Manimal, LLC was founded in 2009 "to aid achievement of maximum levels of fitness, by creating and selling athletic clothing and gear, such as wrist-wraps, for dedicated gym attendees." ECF 38, Corbo Decl., at ¶ 3. Defendant first sold t-shirts using the MANIMAL mark as of July 1, 2010. *Id*. at ¶ 6. On November 15, 2011, Defendant added wrist wraps to its product line. *Id*.; ECF 46-13, Ex. 123, at 64. Currently, Defendant sells other products with the MANIMAL mark, including weight straps, neck gaiters, stickers, and banners, but wrist wraps and t-shirts remain its best-selling items. ECF 47-1, Ex. 126; ECF 47-3, Ex. 128. Defendant's "targeted customer market consists of men and women within the United States who work out in a gym 5 day a week, between the age of 21-45." ECF 38, Corbo Decl., at ¶ 23. At the same time,

defendant currently offers one children's product—a baby "onesie"—and has expressed that it may offer additional children's products "due to demand from adult customers" and "collateral to [its] main, adult market." *Id*. Defendant viewed its actual and potential children's products as "complement[ary to] the the products that [it] made so that [its] customers could buy products for their kids." ECF 46-13, Ex. 122, at 30.

Defendant sells MANIMAL goods directly through its website and other online retailers, and has neither brick-and-mortar retail locations nor a distribution relationship with Walmart. ECF 38, Corbo Decl., at ¶ 15–16. Defendant advertises exclusively on social media. *Id*. at ¶ 20. Plaintiffs argue that much of Defendant's advertising content is "sexist and misogynist . . . or laced with profanities." ECF 42 at 22.

**B. Defendant's Trademark Applications and Procedural History**

On January 8, 2012, shortly after it began selling the wrist wraps, Defendant applied under 15 U.S.C. § 1051(a) to register MANIMAL in International Class 25 for "[m]en's, [w]omen's and [c]hildren's clothing, namely, [t]ops, bottoms, pants, underwear, socks, [t]-shirts, hats, sweatpants, long sleeve shirts, thermal tops, shorts, bathing suits, athletic uniforms, tank tops, wrist wraps,[2] footwear, jackets, warm-up suits, belts, beanies, bandanas, wrist bands, sweaters, jeans, [c]ompression garments for athletic and other non-medical use, namely, compression socks, stockings, leggings, jerseys, vests, trousers, sleeves, [and] shirts." ECF 34 at 3–4.

---

[2] Plaintiffs assert that the wrist wraps Defendant produces "are not the type of wrist wrap that would support use in Class 25, since they are used in connection with sports and are properly classified in Class 28." ECF 42 at 20 n.51. In support of this assertion, Plaintiffs reference the fact that Defendant applied under Class 28 on August 27, 2019. *Id*. But Plaintiffs offer no evidence that wrist wraps might properly be classified under Class 25 *and* Class 28. *See* 37 C.F.R. § 2.86 ("[A]n applicant may apply to register the same mark for goods, services, and/or a collective membership organization in multiple classes.").

On April 29, 2013, Defendant converted its application to an "intent to use" ("ITU") application under 15 U.S.C. § 1051(b) because Defendant intended to expand its product line and use the mark on other items in International Class 25. ECF 38, Corbo Decl., at ¶ 10.

On February 8, 2017, Plaintiffs filed a Notice of Opposition under § 13 of the Federal Trademark Act, 15 U.S.C. § 1063, seeking to prevent the issuance of a federal trademark registration for the MANIMAL mark in connection with the goods listed in the MANIMAL application. ECF 34 at 4.

On February 13, 2020, the TTAB issued a final decision denying Plaintiffs' opposition. *Id*. The parties agree that the TTAB's decision is reviewable by this court under § 21(b) of the Federal Trademark Act, 15 U.S.C. § 1071(b). *Id*.

**STANDARDS**

Under Fed. R. Civ. P. 56, a party is entitled to summary judgment is the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Faced with cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006); *see also Pinto v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sand, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-moving party then bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id*. "This burden is not a light one." *Id*. The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co*, 475 U.S. at 586. Furthermore, the party cannot rely on the pleadings to create a "genuine" dispute under Rule 56. *See Anderson*, 477 U.S. at 248.

## DISCUSSION

### A. Judicial Review of the TTAB Decision under 15 U.S.C. § 1071(b)

Both parties seek summary judgment on Plaintiffs' First Claim for judicial review of the TTAB decision under § 21(b) of the Federal Trademark Act, 15 U.S.C. § 1071(b). Defendant argues that the TTAB's decision must be upheld because it is supported by substantial evidence. ECF 37 at 13. Plaintiff, on the other hand, argues that this Court must review the TTAB's decision de novo because of the presence of new evidence, and that such new evidence warrants a reversal of the TTAB's decision.

#### 1. Standard of Review

To begin with, the parties disagree about the applicable standard of review. As noted above, Defendant argues that the TTAB's decision must be upheld if it is supported by substantial evidence, the deferential standard of the Administrative Procedure Act ("APA"). *See Dickinson v. Zurko*, 527 U.S. 150, 164–65 (1999) (holding that the APA standard applied to findings of fact by the Patent and Trademark Office ("PTO")); *On-Line Careline, Inc. v. Am. Online, Inc*., 229 F.3d 1080, 1085 (Fed. Cir. 2000) (extending *Zurko* to reviews of TTAB findings). Plaintiffs argue, and Defendant does not challenge, that this Court must review de novo any new evidence presented to it. *See StonCor Group, Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014).

Plaintiffs further argue, but Defendant disagrees, that when new evidence is presented, this Court must review both the new evidence and the administrative record de novo. In *Kappos v. Hyatt*, 566 U.S. 431 (2012), the Supreme Court held that "[i]f new evidence is presented on a disputed issue of fact, the district court must make *de novo* factual findings that take account of both the new evidence and the administrative record before the PTO." *Id*. at 446. The Supreme Court noted that, despite the PTO's "special expertise in evaluating patent applications, the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts." *Id*. at 445. Then, in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015), the Supreme Court noted that a District Court reviewing a TTAB decision "resolves registration *de novo*" and cites *Kappos* to note the "analogous scheme in patent law." *Id*. at 144. *See 5* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 21:20 (5th ed. 2019) ("[I]f review is sought in a federal district court, new evidence is permitted and both the new

evidence and the T.T.A.B. record are reviewed with '*de novo*' scrutiny.").[3] Thus, this Court will review any new evidence as well as the administrative record of the TTAB de novo.

**2. TTAB Findings and New Evidence**

Plaintiffs' main argument to the TTAB was the there was a "likelihood of confusion" under § 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), between the GARANIMALS mark and the MANIMAL mark. ECF 1-2 at 3. The TTAB found that "Applicant's mark MANIMAL for men's, women's and children's clothing listed in the description of goods is not likely to cause confusion with Opposers' GARANIMAL marks for clothing." ECF 1-2 at 28. "The TTAB evaluates likelihood of confusion by applying some or all of the 13 factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973)." *B&B Hardware*, 575 U.S. at 144. The *DuPont* factors are:

> (1) [t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression[;] (2) [t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use[;] (3) [t]he similarity or dissimilarity of established, likely-to-continue trade channels[;] (4) [t]he conditions under which and buyers to whom, sales are made, i.e., "impulse" vs. careful, sophisticated purchasing[;] (5) [t]he fame of the prior mark[;] (6) [t]he number and nature of similar marks in use on similar goods[;] (7) [t]he nature and extent of any actual confusion[;] (8) [t]he length of time during and conditions under which there has been concurrent use without evidence of actual confusion[;] (9) [t]he variety of goods on which a mark is or is not used . . . [;] (10) [t]he market interface between the applicant and the owner of the prior mark . . . [;] (11) [t]he extent to which applicant has a right to exclude others from use of

[3] Defendant cites "McCarthy on Trademarks § 21:22.50 (5th ed. 2019)" for the proposition that the substantial evidence "standard of review applies regardless of whether review is sought in U.S circuit court or district court." ECF 37 at 13. There is no § 21:22.50 in the Fifth Edition of the treatise. That said, this Court notes that § 21:22 is titled "Review by civil action—standard of review used before the *Kappos* precedent" and explicitly notes, as § 21:20 does, that "after the 2012 *Kappos* case, the district court reviews with '*de novo*' scrutiny." McCarthy § 21:22.

> its mark on its goods[;] (12) [t]he extent of potential confusion, i.e., whether *de minimis* or substantial[; and] (13) [a]ny other established fact probative of the effect of use.

*DuPont*, 476 F.2d at 1361. "Not all of the *DuPont* factors are necessarily 'relevant or of equal weight in a given case, and any one of the factors may control a particular case' . . . The T.T.A.B. is not required to discuss every *DuPont* factor and may find a single factor dispositive." *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 1355 (Fed. Cir. 2011).

The TTAB made findings on the similarity and dissimilarity and nature of the goods (second factor), ECF 1-2 at 8; the established, likely-to-continue channels of trade and the classes of customers (third and fourth factors), *id*. at 11; the time during and conditions under which there had been concurrent use of the marks without evidence of actual confusion (seventh and eighth factors), *id*. at 12–13; the strength of the GARANIMALS mark (fifth and sixth factors), *id*. at 16; and the similarity and dissimilarity of the marks, *id*. at 24. On the fifth and sixth factors, the TTAB found the GARANIMALS mark "commercially strong, but not famous," while noting "the dominant role fame plays in the likelihood of confusion analysis." *Id*. The TTAB found that the second, third, and fourth factors favored a finding of likelihood of confusion, *id*. at 11–12, and that the seventh and eighth factors were neutral, *id*. at 16. Ultimately, the TTAB's decision turned on its finding that the marks were too dissimilar, specifically finding that "[d]espite the inherent commercial strength of the GARANIMAL marks, the marks differ enough in sight, sound, meaning and commercial impression that confusion is not likely." *Id*. at 27. The TTAB reasoned that Defendant's "mark places the letter 'M' before the word 'animal' to create 'Manimal,' a combination of man and animal. Opposers, on the other hand, place the letters 'Gar' before the word 'animal' to create a fanciful term without any meaning." *Id*. at 26. Addressing third-party registrations, the TTAB concluded that, because the "registrations were

issued after [Plaintiffs'] first use and registration of GARANIMAL," Plaintiffs "must believe that various 'animal' or 'imals' suffix marks can be used and registered side by side without causing confusion provided there are minimal differences between the marks." *Id.* at 27.

Plaintiffs' new evidence is mainly aimed at the TTAB's finding that the GARANIMALS mark is strong but not famous. Indirectly, Plaintiffs' new evidence also seeks to undermine the TTAB's finding that the marks are dissimilar, since the "[f]ame of an opposer's mark or marks, if it exists, plays a 'dominant role in the process of balancing the *DuPont* factors.'" *Bose Corp. v. QSC Audio Prods. Inc.*, 293 F.3d 1367, 1372 (Fed. Cir. 2002) (quoting *Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000)). Plaintiffs do not present any new evidence about the inherent strength of the GARANIMALS mark, which the TTAB already found to be strong. ECF 42 at 31. But Plaintiffs have introduced new evidence which undermines the TTAB's finding that "the only evidence of unsolicited media attention is the aforementioned reference in the Dr. Joyce Brothers publication." ECF 1-2 at 23. Plaintiffs provided a more recent TTAB opinion involving the GARANIMALS[4] mark in which the TTAB found that "[t]he unsolicited media attention, in various news articles with nationwide publication and as well as mentions on popular entertainment shows, reflects the extent of public awareness of the GARANIMALS brand for children's clothing." ECF 46-1, Ex. 2, at 19. Citing the public record in that case, the TTAB found that "[t]he GARANIMALS brand has received unsolicited media attention from various media outlets, including The Academy Awards Show, The Tonight Show [w]ith Jimmy Fallon, Saturday Night Live, Glee, Shameless, and news stories reported in The Wall Street Journal, Newsweek, Entertainment Weekly, The Washington Post, GQ and The New York Times." *Id.* at

---

[4] *Garan Services Corp. v. The Ultimate Green Store, LLC*, Opp. No. 91239649 (T.T.A.B. May 20, 2021).

18. Plaintiffs also introduced evidence that GARANIMALS has been mentioned by prominent individuals, including politicians and entertainers; included in a book on popular culture; featured in well-known comic strips; and appeared as both an answer to a *New York Times* crosswords question and a question on the game show *Jeopardy!*. ECF 44, Kamiel Decl., at ¶¶ 41–43; ECF 46-1, Exs. 4–9, at 30–59; ECF 46-2, Exs. 10–19; ECF 46-3, Exs. 20–29; ECF 46-4, Exs. 30–39; ECF 46-5, Exs. 40–49; ECF 46-6. Exs. 50–59; ECF 46-7, Exs. 60–69; ECF 46-8, Exs. 70–79; ECF 46-9, Exs. 80–85, at 1–31 (compiling examples of media coverage of GARANIMALS). Indeed, presented with a more robust record, the TTAB "f[ound] that Opposer's GARANIMALS brand on clothing may be placed close to the 'famous' end of the spectrum of strength of marks for purposes of a likelihood of confusion analysis." ECF 46-1, Ex. 2, at 19.

In analyzing the fame of the mark, the TTAB noted evidence of Plaintiffs' advertising expenditures and revenues, but also found that Plaintiffs had failed to "provide some context for its advertising expenditures and revenues (e.g., market share, how Opposers revenues and advertising expenditures compare with comparable goods)." ECF 1-2 at 23. Plaintiffs have now submitted evidence of its market share showing that it is the second largest children's clothing brand by market share, second only to Carter's and ahead of brands including Children's Place, Old Navy, Gerber, OshKosh, Circo, Hanes, Wrangler, and Healthtex. ECF 44 at ¶ 38; ECF 44-4, Ex. D; ECF 44-5, Ex. E; ECF 44-6, Ex. F. Similarly, Plaintiffs submitted market studies showing that GARANIMALS' brand awareness exceeds that of Old Navy, Baby Gap, and Children's Place. ECF 44 at ¶ 38; ECF 44-4, Ex. D; ECF 44-5, Ex. E; ECF 44-6, Ex. F.

Although not to establish fame, Plaintiffs also submitted new evidence related to third-party registrations. Ultimately, this evidence also undermines the TTAB's ultimate finding that

the marks were dissimilar. Though the TTAB did not find that the existence of third-party registrations made the GARANIMALS mark inherently weak, ECF 1-2 at 18–20, the TTAB did use the third-party registrations in the similarity-of-marks analysis as evidence that Plaintiffs "must believe that various 'animal' or 'imals' suffix marks can be used and registered side by side without causing confusion provided there are minimal differences between the marks," *id*. at 27. Plaintiffs have now introduced evidence that, of the eight marks mentioned by the TTAB, four have since been cancelled for nonuse and four are not currently in use in connection to apparel. ECF 46, Klein Decl., at ¶¶ 12–13; ECF 49, Hewlett Decl., at ¶¶ 3–7; ECF 49-1, Ex. A; ECF 49-2, Ex. B; ECF 49-3, Ex. C; ECF 49-4, Ex. D. Plaintiffs also introduced evidence of its enforcement program, which has yielded the successful cancellation or opposition of sixteen 'animal'-suffix marks. ECF 44, Kamiel Decl., at ¶¶ 45–46; ECF 46, Klein Decl., at ¶¶ 13–14, ECF 46-9, Exs. 88–89, at 46–49; ECF 46-10, Exs. 90–99; ECF 46-11, Exs. 100–09; ECF 46-12, Exs. 100–17, at 1–39. This evidence cuts against the TTAB's definitive finding that Plaintiffs' supposed acquiescence to existing 'animal' or 'imal' marks means that it *must* view such marks as unlikely to cause confusion.

Plaintiffs have submitted a plethora of new evidence that goes directly to the heart of the TTAB's decision. Plaintiffs introduced additional evidence to support a finding that the GARANIMALS mark is famous that specifically address the TTAB's concern that there was no evidence of unsolicited media attention and no context for Plaintiffs' advertising expenditures and revenue. This new evidence demands this Court's de novo review of both the new evidence and the administrative record.

**3. De Novo Review**

Reviewing the evidence de novo, this Court finds, like the TTAB did when presented with a similar record, that the GARANIMALS mark is famous for purposes of the likelihood of

confusion analysis.[5] Not only has the mark long been in use, it has become "synonymous with a system of mixing and matching separates" and "been credited as the inspiration for many fashion start-ups and trends." ECF 44, Kamiel Decl., at ¶ 41. Although Defendant argues that Plaintiffs are well known for their *system* of clothing rather than for their mark itself, this Court finds that the mark has acquired strength over time to such an extent that both the mark itself and the style of clothing are readily identifiable by consumers. And it is apparent from Plaintiffs' evidence related to advertising expenditures, market share, and sales rate and volume that the mark is more than just "commercially strong," as the TTAB found.[6] The TTAB found that lack of fame was dipositive as to the likelihood of confusion analysis. This Court, however, finds that the GARANIMALS mark is famous and thus entitled to broad protection. *See Recot*, 214 F.3d at 1327 ("Famous marks . . . enjoy a wide latitude of legal protection").

---

[5] While it is true that the TTAB at first wrote that the GARANIMALS mark "may be placed close to the 'famous' end of the spectrum of strength of marks for purposes of a likelihood of confusion analysis," ECF 46-1, Ex. 2, at 19, this Court notes that the TTAB then referred to "the *fame* of Opposer's mark" and the Applicant's mark being viewed as an "extension of Opposer's *famous* GARANIMALS product line," *id*. at 22.

[6] This Court has considered Defendant's objections to Plaintiffs' new fame evidence and finds them without merit. Defendant objects to the Russell Research survey and the media clippings on hearsay and authenticity grounds. ECF 50 at 25. First, none of the evidence is hearsay because, contrary to Defendant's argument, it does not "assert the proof [sic] of the matter asserted—that GARANIMALS is famous." *Id*. Rather, the survey asserts other facts about GARANIMALS that Plaintiffs use as evidence of fame and the unsolicited media demonstrates public exposure to the brand. Moreover, there is no authenticity problem with the survey because as Plaintiffs' CEO stated, Plaintiffs regularly commissioned such surveys and provided information about the methodology relied upon. ECF 56, Kamiel Decl., at ¶¶ 6–9; ECF 56-1, Ex. G; ECF 56-2, Ex. H; ECF 56-3, Ex. I. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Similarly, there is no authenticity problem with the media clippings which are self-authenticating. *See* Fed. R. Evid. 902(6).

At oral argument, Defendant attempted to distinguish between brands that are arguably ubiquitous in American culture—McDonalds and Walmart, for example—and brands like Plaintiffs' which are well known but not famous. This Court notes that ubiquity is not a prerequisite for a finding of fame. *See, e.g.*, *New Era Cap. Co Inc. v. Pro Era, LLC*, 2020 WL 2853282, at *12 (T.T.A.B. 2020) ("[T]he proper legal standard for evaluating the fame of a mark under the fifth *DuPont* factor is the class of customers and potential customers of a product or service, and not the general public.") (internal quotation marks and citation omitted).

Thus, before this Court are two marks—one famous and one newcomer—which are appended to similar goods with identical channels of trade and similar classes of customers. Moreover, the owner of the famous mark has successfully canceled several other marks which use the same suffix. Against that backdrop, this Court disagrees with the TTAB's finding that the marks do not present a likelihood of confusion. Defendant relies heavily on the TTAB's finding that its "mark places the letter 'M' before the word 'animal' to create 'Manimal,' a combination of man and animal" while Plaintiffs "place the letters 'Gar' before the word 'animal' to create *a fanciful term without any meaning*." ECF 1-2 at 26 (emphasis added). This Court finds more persuasive the reasoning of *Kimberly-Clark Corp. v. H. Douglas Enterprises, Ltd.*, 774 F.2d 1144 (Fed. Cir. 1985), in which a strong mark associated with disposable diapers—HUGGIES—was afforded broad protection against a newcomer mark also associated with disposable diapers—DOUGIES. *Id*. at 1145–46. There, as here, the court noted similarities in the goods, the trade channels, and the classes of customers. *Id*. at 1146. And while the TTAB "thought the commercial impression of the two marks differed significantly—[the plaintiff]'s suggesting a diaper which hugged a baby's body while [the defendant]'s would be perceived from the name Doug," the court found the "supposed difference" "not a striking one, [which] tends to disappear

in the face of the evidence." *Id*. The Court also found that the TTAB "took inadequate account" of the nature of the plaintiff's sales revenue and advertising expenditures. *Id*. at 1146–47. Here, as well, the fact that the TTAB could articulate some rational explanation for the difference between GARANIMAL and MANIMAL does not vitiate the fact that the marks "sound much alike and actually rhyme." *Id*. at 1146. In light of this Court's finding that GARANIMALS is famous, the similarities between the marks carries more weight than the purported differences. *See Kenner Parker Toys, Inc. v. Rose Art Indus.*, 963 F.2d 350, 355 (Fed. Cir. 1992) ("In a correct assessment of the *duPont* factors, the fame of [the senior mark] should have magnified the significance of these similarities."); *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ("We therefore apply a sliding scale approach as to the weight that [*DuPont* factors] will carry dependent on the strength of the trademark holder's mark.").

At oral argument, Defendant devoted significant time to the appearance of the MANIMAL mark as presented on Defendant's website and social media, characterizing it as tough and contrasting it with a more innocent look cultivated by Plaintiffs as to the GARANIMALS mark. But for registration purposes, this Court, like the TTAB, looks "within the four corners of the application." *Seacret Spa Intl. v. Lee*, 1:15cv405(JCC/IDD), 2016 WL 880367, at *3 (E.D. Va. 2016). *See also B&B Hardware*, 575 U.S. at 143 ("[I]f an application does not delimit any specific trade channels of distribution, no limitation will be applied."); 5 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 20:15 (5th Ed. 2019) ("In determining likelihood of confusion in an opposition, it is the mark as shown in the application and as used on the goods described in the application which must be considered, not the mark as actually used by applicant."). Defendant's application presents the MANIMAL mark in plain font and includes a statement that "[t]he mark consists of standard characters, without

claim to any particular font, style, size, or color." U.S. Trademark Application Serial No. 85511299 (filed Jan. 8, 2012). "It is settled [] that a distinction in trade dress cannot weigh against likelihood of confusion with respect to the registration of a simple word mark . . . The reason is that such dress might well be changed at any time; only the word mark itself is to be registered." *Kimberly Clark Corp.*, 774 F.2d at 1147. The presentation of Plaintiffs' and Defendant's respective marks may be relevant to Defendant's other claims, but not for likelihood of confusion analysis.

For these reasons, this Court grants Plaintiffs' motion for summary judgment on the First Claim and reverses the TTAB's decision.

**B. Trademark Infringement under 15 U.S.C. § 1114(1) and False Designation of Origin under 15 U.S.C. § 1125(a)**

Defendant seeks summary judgment on Plaintiffs' Second and Third Claims for infringement of a federally registered trademark under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs oppose the motion but do not seek summary judgment.

First, Defendant claims that Plaintiffs' infringement claims are precluded by the very TTAB decision which Plaintiffs now appeal. This cannot be. While it is true that *B&B Hardware* contemplates the preclusive effect of a TTAB decision in some cases, 575 U.S. at 153, Defendant "neglects to account for the appeal mechanism available to a party unsatisfied with a TTAB decision," *Hanginout, Inc. v. Google, Inc.*, No.13cv2811 AJB, 2015 WL 11254689, at *3 (S.D. Cal. June 3, 2015). *See also B&B Hardware*, 575 U.S. at 152 (noting that, "if a party urged a district court reviewing a TTAB registration to give preclusive effect to the very TTAB decision under review," preclusion would not apply).

"The test for whether trademark infringement has occurred is identical to the test for whether false designation of origin has occurred." *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1298 (D. Or. Oct. 7, 2009) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). "A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to cause confusion, or to cause mistake, or to deceive." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (internal quotation marks and citation omitted). In assessing the likelihood of confusion, courts consider these factors, derived from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), though no one factor is dispositive:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Ironhawk Techs.*, 2 F.4th at 1160 (quoting *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080 (9th Cir. 2005).

Defendant urges this court to find that the GARANIMALS mark is not famous. ECF 37 at 17. But for the reasons stated above, this Court disagrees and holds that the mark is famous. At the very least, the strength of the mark is a disputed issue of fact precluding summary judgment. Defendant also urges this Court to adopt the TTAB's reasoning that the marks were dissimilar and thus unlikely to cause confusion. Again, as stated above, the TTAB's purported dissimilarity—largely rehashed by Defendant, *id.* at 25–26—is not so persuasive and not dispositive. And while it may have been this Court's obligation to weigh in on the similarity of the marks for the purpose of a TTAB appeal under 15 U.S.C. § 1071(b), it is a decision for the

jury in the context of a trademark infringement claim. Similarly, the jury will weigh the evidence of actual confusion, marketing channels, likely care exercised by purchasers, Defendant's intent, and the likelihood of expansion.

**C. Dilution under 15 U.S.C. § 1125(c)**

Defendant seeks summary judgment on Plaintiffs' Fourth Claim for dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Plaintiffs oppose the motion but do not seek summary judgment.

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another [] who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). For a dilution claim, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). A mark's degree of recognition is measured by accounting for (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; and (3) the extent of actual recognition of the mark. 15 U.S.C. § 1125(c)(2)(A)(i)–(iii). "Fame for likelihood of confusion and fame for dilution are distinct concepts, and dilution fame requires a more stringent showing." *Coach Servs. v. Triumph Learning, LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (citing 4 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 24:104 at 24-290 (4th Ed. 2011)).

Defendant's argument boils down to (1) insisting again that this Court defer to the TTAB's fame determination for likelihood of confusion and (2) noting that if the

GARANIMALS mark is not famous for likelihood of confusion purposes, it is not famous for dilution purposes. This Court is not upholding the TTAB's fame finding, for likelihood of confusion or otherwise. So while it is true that a finding of fame for a dilution claim is comparatively stringent, it will be up the jury to decide whether the GARANIMALS mark is famous enough to carry Plaintiffs' dilution claim. And while Defendant argues that Plaintiffs' allegation that the MANIMAL mark has tarnished its "goodwill and reputation" does not constitute "harm to the [GARANIMAL] mark," this too is a question of fact for the jury. ECF 37 at 32. *See* 15 U.S.C. § 1125(c)(1) (dilution claim does not require "actual or likely confusion, [] competition, or [] actual economic injury"); 2 Anne Gilson LaLonde, *Gilson on Trademarks* § 5A.01 (2021) (explaining that a finding of tarnishment is more likely "[w]here a product or mark is associated with obscenity [or] sexual activity").

**D. Lack of Bona Fide Intent to Use under 15 U.S.C. § 1051(b)**

Both parties seek summary judgment on Plaintiffs' Fifth Claim that Defendant had no bona fide intent to use its mark when it filed its trademark application under § 1 of the Federal Trademark Act, 15 U.S.C. § 1051(b). In light of its ruling on Plaintiffs' First Claim for review of the TTAB's decision, which results in the cancellation of Defendant's registration, this Court is inclined to dismiss the Fifth Claim as moot. Each party shall submit supplemental briefing not to exceed five pages explaining its objection, if any, to the dismissal of Plaintiffs' 15 U.S.C. § 1051(b) claim for mootness within fourteen days of the issuance of this Opinion.[7]

[7] At oral argument, a question arose as to the veracity of a sales receipt Defendant submitted to establish its history of shoe sales. Defendant has since submitted a declaration explaining that it had inadvertently submitted a "mock" invoice and a substitutes an exhibit containing a genuine invoice and transaction record. ECF 67; ECF 67-2; ECF 67-3. This Court acknowledges the clarification and appreciates Defendant's efforts to correct the mistake. The evidence was salient only as to Defendant's intent to use and has not otherwise factored into this Court's reasoning on the cross-motions for summary judgment. If this Court reaches the merits

**CONCLUSION**

Defendant's Motion for Summary Judgment, ECF 37, is DENIED. Plaintiff's Cross-Motion for Summary Judgment, ECF 42; ECF 43, is GRANTED IN PART. Reviewing the TTAB's decision under 15 U.S.C. § 1071(b), this Court reverses the TTAB's denial of Plaintiff's opposition to the registration of Defendant's mark and ORDERS that the registration be canceled. *See* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part."). This Court RESERVES ruling on Plaintiffs' 15 U.S.C. § 1051(b) claim pending briefing on the mootness issue. The Parties are ORDERED to submit supplemental briefing of no more than five pages on whether or not Plaintiffs' Fifth Claim should be dismissed as moot within fourteen days of this order.

**IT IS SO ORDERED**.

DATED this 25th day of January, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

of the parties' arguments on the Fifth Claim after reviewing the supplemental briefing, it will consider the substitute exhibit.